## LEHMANN v. SCHMIDT.[*]

### No. 12,547; December 5, 1889.

22 Pac. 973.

**Factors—Lien—Conversion.—Defendant Agreed to Sell** plaintiff's wine at a certain net price, the excess to be divided equally between them. After receiving a part thereof, and making advances to plaintiff thereon, and paying freight, in accordance with the agreement between them, defendant refused to receive any more; and, before any of the wine had been sold, plaintiff demanded a return of that which defendant had received, without offering to pay back the money which defendant had advanced and expended for freight.

---

[*] For subsequent opinion in bank, see 87 Cal. 15, 25 Pac. 61.

Held, that under Civil Code, sections 2026, 3051, 3053, defining a factor, and giving him a lien on the property placed in his hands for money advanced and expended, defendant was a factor, and had a lien on the wine, and a right to retain it, so that his refusal to comply with the demand did not constitute a conversion.

APPEAL from Superior Court, City and County of San Francisco; James G. McGuire, Judge.

Action by Ernst Lehmann against R. Schmidt for goods sold and delivered. Judgment for plaintiff, and defendant appeals.

Chapman & Slack for appellant; A. Heyneman for respondent.

BELCHER, C. C.—The case presented for consideration is this: One E. B. Smith was the owner of about one hundred thousand gallons of wine, which he desired to sell. The wine was stored in a cellar at Cordelia, and was in an unsalable condition. Smith met the defendant, Schmidt, and, as he testifies, Schmidt said "he thought he could make a proposition to me, and that, if I would name the standard price that I would be willing to receive for the wine, that he thought he could bring it to the city and treat it, and whatever could be got more than the amount that I would be willing to sell it for after treating it would be divided between us." The parties then entered into a written agreement, as follows:

"San Francisco, March 3, 1886.

"Agreement made between E. B. Smith, of Martinez, and R. Schmidt, of San Francisco, as following: (1) The said E. B. Smith, having at his cellars at Cordelia about 50,000 gallons Malvasia and Mission, 30,000 gallons Zinfandel, and 22,000 Malvasia, agrees to sell his wines through the agency of the said R. Schmidt at the standard price of 20 cents (twenty cents) per gallon, net. (2) The said R. Schmidt agrees to prepare these wines into a marketable condition at the rate of 1 cent (one cent) per gallon, and to outlay freight on these wines to this city, amounting about to 1 cent (one cent) per gallon. It is further agreed between the parties hereto that all the profits arising out of the sale of these wines over and above the standard price of 20 cents per gallon, and the additional expenses, about 2 cents per gallon,

shall be divided in equal shares between the parties hereto; and the said R. Schmidt agrees to furnish the necessary advances of money, in case E. B. Smith is in want of any, the latter giving the proper time of notification to procure the money. No commissions to be deducted, as the one-half of the profit is considered equivalent for all charges and commissions.''

Under and in pursuance of this agreement, Smith sent to defendant, on the twentieth day of March, 1886, five thousand eight hundred and two gallons of the wine, and, on the eighth day of May following, two thousand one hundred and seventy-nine gallons more; and defendant received the wine, and paid the freight thereon. On account of the wines so delivered, and under the agreement, defendant advanced and paid to Smith several sums of money, aggregating $678.50. Defendant also delivered to Smith some casks, which Smith says he ordered, and defendant says "were sold to Smith at his request, and the charges made against him as advances under said contract." For some reason not clearly stated, defendant became dissatisfied, and refused to receive the balance of the wine under the contract; and thereupon, on the thirtieth day of May, 1886, Smith sold all the wine remaining at Cordelia to other parties for eleven cents per gallon. Subsequently, on the seventeenth day of June, 1886, Smith demanded from defendant a return of the wines delivered to him under the contract, but defendant refused to give them up, or make any accounting. No offer was made at the time of this demand, or subsequently, so far as appears, to pay defendant the money he had advanced on the wines and expended for their freight and improvement, or any part thereof, nor to return to him the casks which he had furnished. In this condition of things, Smith, on the seventeenth day of July, 1886, sold and assigned to the plaintiff all his "interest and claim, of whatever kind and nature, in and to those ten thousand gallons of wine, more or less, now held by R. Schmidt, or sold by him for my account"; and thereafter, on the twenty-third day of the same month, the plaintiff commenced this action, alleging in his complaint "that on or about the eighteenth day of June, A. D. 1886, in the city and county of San Francisco, state of California, E. D. Smith sold and delivered to the defendant, and at his

instance and request, those certain goods, wares, and merchandise, to wit, nine thousand gallons wine, at twenty cents a gallon, amounting in the aggregate to the sum of eighteen hundred (1,800) dollars''; that defendant agreed to pay for the same, but had not paid the said sum, or any part thereof, though often requested so to do; and that Smith on the seventeenth day of July, assigned, set over, and transferred to plaintiff ''the aforesaid indebtedness and claim against said defendant.''

The court below found, among other things, that Smith delivered to defendant, under the agreement, and at the times above stated, seven thousand nine hundred and eighty-one gallons of wine, and that this wine was, at all the times mentioned, worth the sum of twenty cents per gallon, amounting to $1,596.20; that defendant advanced for and on account of the wines, under the agreement, the sum of $678.50 in money, and that he ''made no further advances of any kind, or incurred liabilities of any kind, chargeable to said E. B. Smith under said agreement''; that defendant refused to proceed further under the agreement, and on the seventeenth day of June, 1886, Smith made a demand upon him for the return of said wines, and for an accounting of any wine sold by him under the contract, but that he refused to return the said wines, or to give any account of the same, or any part thereof; ''that no part of said seven thousand nine hundred and eighty-one gallons of wine had been sold by said defendant prior to said seventeenth day of June, A. D. 1886, and that the whole of said seven thousand nine hundred and eighty-one gallons of wine was then and thereafter converted to the use and benefit of said defendant''; that on the seventeenth day of July, 1886, Smith, ''by an instrument in writing, assigned, set over, and transferred to the plaintiff the indebtedness and claim against the defendant sued on in this action''; and, as a conclusion of law, that plaintiff was entitled to judgment against the defendant for the sum of $917.70, and legal interest thereon from the seventeenth day of June, 1886. Judgment was accordingly so entered, and from that judgment the defendant has appealed.

It is contended for the appellant that the judgment was erroneous, and that there are several sufficient reasons for its

reversal. We think it necessary to consider only one of the objections urged. It is unquestionably settled law, as claimed by respondent, that, when one person takes and converts to his own use the personal property of another, the owner may waive the tort, and sue in assumpsit for the value of the property converted: Fratt v. Clark, 12 Cal. 89; Roberts v. Evans, 43 Cal. 380; Berly v. Taylor, 5 Hill (N. Y.), 577; 2 Greenl. Ev., sec. 108. But this rule does not apply to the case in hand. Here the defendant was employed by Smith as his factor to sell wine: Civ. Code, sec. 2026. Some of the wine was shipped to him, and he paid the freight, and expended other money upon it. He also advanced to Smith a considerable sum of money. For the money so paid, expended, and advanced he had a valid lien on the wine placed in his possession: Civ. Code, secs. 3051, 3053. And, when demand was made that he return or account for the wine, it was all still in his possession unsold, and there was no offer to pay back to him any of this money. Under these circumstances, he had a right to retain the wine, and his refusal to comply with the demand did not constitute a conversion. From this it necessarily follows that the plaintiff had no cause of action in assumpsit for goods sold and delivered. His remedy, if he had any, was by some other action or proceeding. We therefore advise that the judgment be reversed.

We concur: Vanclief, C.; Hayne, C.

PER CURIAM.—For reasons given in the foregoing opinion the judgment is reversed.